VANERIAN v CHARLES L PUGH CO, INC

Docket No. 276568. Submitted June 12, 2008, at Lansing. Decided July 1,
2008, at 9:00 a.m. Leave to appeal sought.

Marie Vanerian brought an action in the Wayne Circuit Court
against Charles L. Pugh Co., Inc. (Pugh), and G & G Floor
Company (G & G Floor), seeking monetary damages for flood
damage to the floor of her home's basement and related struc-
tures, for accumulation of mold, and for other incidental and
consequential damage. After a previous flood in her basement, the
plaintiff's homeowner's insurer had hired Pugh to repair the
plumbing, sewer or drainage system, and the wood floor in the
basement. Pugh had then contracted with G & G Floor for the
replacement of the basement floor. Another flood occurred and
prompted the plaintiff's action. The court, Isidore B. Torres, J.,
granted summary disposition for G & G Floor, ruling that the
plaintiff was not an intended third-party beneficiary of the contact
between Pugh and G & G Floor. The plaintiff appealed.

The Court of Appeals *held*:

1. MCL 600.1405 provides that any person for whose benefit a
promise is made by way of contract has the same right to enforce
the promise as if the promise had been made directly to the person,
and that a promise shall be construed as having been made for the
benefit of a person whenever the promisor has undertaken to give
or to do or refrain from doing something directly to or for the
person. Not every person incidentally benefitted by a contractual
promise has a right to sue for breach of that promise. Only
intended third-party beneficiaries may sue for breach of a contrac-
tual promise in their favor.

2. A court should look no further than the form and meaning
of the contract itself to determine whether a party is an intended
third-party beneficiary within the meaning of MCL 600.1405.

3. Here, the plaintiff was an intended beneficiary of the
contract between Pugh and G & G Floor. The whole and singular
purpose of the contract was to secure repairs to the flooring in the
plaintiff's basement. G & G Floor undertook a promise directly
benefitting the plaintiff, and the plaintiff is expressly referred to in
the contract.

4. Under MCL 600.1405, there is not a different or separate standard determining the third-party beneficiary status of property owners in construction cases involving contracts between contractors and subcontractors.

5. This case must be remanded for a grant of summary disposition in favor of the plaintiff on G & G Floor's motion for summary disposition and for further proceedings.

Reversed and remanded.

CONTRACTS — THIRD-PARTY BENEFICIARIES.

A person is a third-party beneficiary of a contract only when that contract establishes that a promisor has undertaken a promise directly to or for that person; an objective standard is used to determine, from the form and meaning of the contract itself, whether the promisor undertook to give or to do or to refrain from doing something directly to or for the person claiming third-party beneficiary status (MCL 600.1405).

*Giarmarco, Mullins & Horton, P.C.* (by *David A. Binkley* and *Trisha M. Werder*), for Marie Vanerian.

*Sondee, Racine & Doren, PLC* (by *Maurice A. Borden*), for G & G Floor Company.

Before: DONOFRIO, P.J., and SAWYER and MURPHY, JJ.

MURPHY, J. Plaintiff appeals as of right the trial court's order granting summary disposition, under MCR 2.116(C)(10), in favor of defendant G & G Floor Company (defendant). The trial court ruled that plaintiff was not an intended third-party beneficiary of the contract between defendant and defendant Charles L. Pugh Company, Inc. (Pugh). We reverse and remand.

The underlying facts in this case are not in dispute. Plaintiff's basement flooded, causing damage to her home. Plaintiff's homeowner's insurance company hired Pugh to repair the plumbing, sewer or drainage system, and the wood floor in plaintiff's basement. Plaintiff discussed the floor repairs with a Pugh repre-

sentative, who suggested to plaintiff that if she already had a flooring contractor, she should contact that person again to make the repairs.

Defendant had previously performed work for plaintiff in her kitchen and dining room, so plaintiff contacted defendant to discuss the repairs needed for her basement floor. Subsequently, defendant and Pugh entered into a contract under which defendant agreed to replace plaintiff's floor. Under the contract, the name of the job was entitled "Marie Vanerian Residence." Specifically, the contract required defendant to "[t]ear out water damaged flooring and subfloor and haul away debris from the family room and the bar room[,] [s]upply and install a plywood subfloor in the same above rooms[, and] [s]upply, install, sand, stain, seal, and finish maple flooring in the same above rooms." The contract also contained a detailed list of instructions and requirements relative to the job, including, for example, the need for others to remove all furniture, wall hangings, and window treatments. The work to be performed under the contract related entirely to repairs and improvements in plaintiff's house. At some later date, plaintiff's basement flooded again, and the floor installed by defendant buckled and became unusable. Plaintiff proceeded to file suit against Pugh and defendant. She sought to recover for the damage to the floor and related structures, for accumulation of mold, and for other incidental and consequential damage. Plaintiff asserted that she was an intended third-party beneficiary of the contract between Pugh and defendant. The trial court disagreed and summarily dismissed the case against defendant without oral argument.[1]

---

[1] Plaintiff stipulated the dismissal of Pugh.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Kreiner v Fischer*, 471 Mich 109, 129; 683 NW2d 611 (2004).

MCL 600.1405 provides in relevant part:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
>
> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.

It cannot reasonably be disputed that the promises made by defendant in the contract to tear out the old damaged floor and to supply and install a new floor were for plaintiff's benefit. All the work under the contract expressly related to repairs in plaintiff's basement. Indeed, plaintiff and defendant discussed the project with each other at the time the contract was formed at the behest of Pugh, and plaintiff and defendant agreed that defendant would replace her maple floors with oak floors. Defendant undertook to do something directly for plaintiff. The caselaw does not contradict our conclusion that plaintiff was an intended third-party beneficiary under the statute.

In *Schmalfeldt v North Pointe Ins Co*, 469 Mich 422, 427-428; 670 NW2d 651 (2003), the Michigan Supreme Court set forth the principles governing the proper analysis under MCL 600.1405:

> "[T]he plain language of this statute reflects that not every person incidentally benefitted by a contractual promise has a right to sue for breach of that promise . . . ." Thus, only intended, not incidental, third-party beneficiaries may sue for a breach of a contractual promise in their favor.

> A person is a third-party beneficiary of a contract only when that contract establishes that a promisor has undertaken a promise directly to or for that person. By using the modifier directly, the Legislature intended to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract. An objective standard is to be used to determine, from the form and meaning of the contract itself, whether the promisor undertook to give or to do or to refrain from doing something directly to or for the person claiming third-party beneficiary status.
>
> ... [A] court should look no further than the form and meaning of the contract itself to determine whether a party is an intended third-party beneficiary within the meaning of § 1405. [Citations omitted.]

In *Schmalfeldt*, the plaintiff was injured in a bar fight and directly sued the bar's insurer to secure payment for dental bills on the basis that he was a third-party beneficiary of the insurance contract between the bar and the insurer. Our Supreme Court held that the plaintiff was not a third-party beneficiary under the insurance policy. *Schmalfeldt, supra* at 423. The Court concluded:

> The focus of the inquiry ... should be whether [the insurer], by its agreement to cover medical expenses for bodily injuries caused by accidents, had undertaken to give or to do or refrain from doing something directly to or for [the plaintiff] pursuant to the third-party beneficiary statute, MCL 600.1405(1). Thus, ... we must turn to the contract itself to see whether it granted [the plaintiff] third-party beneficiary status.
>
> We affirm the decision of the Court of Appeals because the contract contains no promise to directly benefit [the plaintiff] within the meaning of § 1405. Nothing in the insurance policy specifically designates [the plaintiff], or the class of business patrons of the insured of which he was one, as an intended third-party beneficiary of the medical

benefits provision. At best, the policy recognizes the possibility of some incidental benefit to members of the public at large, but such a class is too broad to qualify for third-party status under the statute. [*Schmalfeldt, supra* at 429 (citations omitted).]

Here, plaintiff was not an incidental beneficiary; the whole and singular purpose of the contract was to secure repairs to the flooring in plaintiff's basement. The focus of the contract is on restoring plaintiff's property; defendant promised to do the work directly for plaintiff. This is not a case involving "the possibility of some incidental benefit to members of the public at large." *Id.* Viewing the contract objectively, defendant undertook a promise directly benefitting plaintiff, and plaintiff is expressly referred to in the contract. Any argument that defendant was not clearly aware that the scope of its contractual undertakings encompassed plaintiff is absurd, given the nature of the contract; it was the "Marie Vanerian Residence" job. This case is easily distinguishable from *Schmalfeldt.*

Our case is also distinguishable from *Brunsell v City of Zeeland*, 467 Mich 293; 651 NW2d 388 (2002), in which the plaintiff tripped and fell on a sidewalk defect, and the sidewalk was part of an area leased to the defendant city by a bank. The city-bank lease required the city to repair the sidewalk, and the plaintiff sued the city, claiming that she was a third-party beneficiary of the lease and that the city breached its contractual undertaking to repair the sidewalk. *Id.* at 294-295. The Supreme Court held that the plaintiff was not a third-party beneficiary of the city-bank lease agreement. *Id.* at 299. The Court reasoned:

In the present case, plaintiff can only plausibly claim third-party beneficiary status under the lease agreement as a member of the public because her claim is premised on contractual language referring to the city repairing im-

provements "as may be necessary for the public safety." There is nothing in the lease agreement that specifically designates plaintiff (or any reasonably identified class) as an intended beneficiary of the promise. Accordingly, . . . plaintiff cannot be considered an intended third-party beneficiary under MCL 600.1405 because the public as a whole is too expansive a group to be considered "directly" benefitted by a contractual promise.

Moreover, an objective analysis of the contract at issue indicates that the contractual provision at issue was intended to delineate the obligations of the city and the bank with regard to the premises, not to directly benefit third parties. The allocation to the city of responsibility to "repair the improvements which it constructs on the premises as may be necessary for the public safety" is in the same paragraph of the lease agreement as the allocation to the bank of the duties to "remove snow, pick-up litter, and perform such other sanitary maintenance as may be required." This reflects that the parties were defining their obligations to each other with regard to maintenance concerns, not acting for the purpose of directly benefiting third parties. With regard to its promise, the city was assuring the bank that the bank would not be responsible for repairing the improvements on the premises to protect public safety. There is no reason to conclude that the bank, obviously a business and not a charitable institution, was acting to protect parties other than itself in receiving this promise. Accordingly, plaintiff was not an intended third-party beneficiary of the lease agreement because an objective analysis reflects that the city's promise to the bank that the city would be responsible for repairs was not intended to directly benefit third parties. [*Id.* at 298-299.][2]

Here, the Pugh-defendant contract specifically designates plaintiff as an intended beneficiary of the promise, i.e., the promise is to remove and replace flooring in

---

[2] In its opinion, the Court stated that a third-party beneficiary can be a member of a class; however, the class must be sufficiently described. *Brunsell, supra* at 297, quoting the lead opinion in *Koenig v South Haven*, 460 Mich 667, 680; 597 NW2d 99 (1999).

the basement of plaintiff's home. There is no expansive group or unidentified party that is benefited by defendant's promises. The obligations delineated in the contract concerned repair of the floor in plaintiff's basement. Pugh was necessarily contracting with defendant for the purpose of directly benefiting plaintiff because Pugh had an obligation to see to it that the basement floor was repaired.

The trial court and defendant relied on *Kisiel v Holz*, 272 Mich App 168, 171-172; 725 NW2d 67 (2006), in which this Court stated:

> In general, although work performed by a subcontractor on a given parcel of property ultimately benefits the property owner, the property owner is not an intended third-party beneficiary of the contract between the general contractor and the subcontractor. 9 Corbin, Contracts (interim ed), § 779D, p 41; see also 2 Restatement Contracts, 2d, § 302, comment e, illustration 19, p 444 (property owner is only an incidental beneficiary of construction subcontract between general contractor and subcontractor). Absent clear contractual language to the contrary, a property owner does not attain intended third-party-beneficiary status merely because the parties to the subcontract knew, or even intended, that the construction would ultimately benefit the property owner. See, e.g., *155 Harbor Drive Condo Ass'n v Harbor Point Inc*, 209 Ill App 3d 631, 646-647; 568 NE2d 365 (1991); see also *Gentile v Ristas*, 160 Ohio App 3d 765, 791-792; 828 NE2d 1021 (2005); *Thomson v Espey Huston & Assoc, Inc*, 899 SW2d 415, 419-420 (Tex App, 1995); *Vogel Bros Bldg Co v Scarborough Constructors, Inc*, 513 So 2d 260, 261-262 (Fla App, 1987).
>
> In the present case, on the basis of an objective review of the contract, we conclude that plaintiff [homeowner] was not an intended third-party beneficiary of the oral subcontract between GFA [subcontractor] and Holz [contractor]. Before the start of construction, Holz orally subcontracted with GFA for excavation and concrete work. Plaintiff does

not dispute the scope of this oral subcontract. There is nothing in the scope of the oral contract to suggest that GFA expressly promised to provide plaintiff with concrete walls. Because the oral contract did not contain an express promise to create the basement walls for plaintiff's benefit, and because the contract was primarily executed for the benefit of the contracting parties, plaintiff was only an incidental beneficiary. Accordingly, plaintiff is unable to maintain an action against GFA for breach of the subcontract.

The problem with *Kisiel*, as we view it, is that there is no discussion regarding the nature of the oral contract and the particular communications between the contractor and the subcontractor, other than an indication that the subcontract was for excavation work and the pouring of concrete. There is no language suggesting that the plaintiff homeowner was mentioned or referenced by name during verbal communications between the contractor and subcontractor when the oral contract was formed. There is no indication that the plaintiff was "directly referred to in the contract." *Schmalfeldt, supra* at 428. As recited above, the *Kisiel* panel concluded that "[t]here is nothing in the scope of the oral contract to suggest that GFA expressly promised to provide plaintiff with concrete walls." *Kisiel, supra* at 172. Here, the contract expressly and directly references plaintiff by name, and defendant promised to tear out the old damaged floor and to supply and install a new floor in the basement of plaintiff's home. In fact, plaintiff and defendant discussed the project with each other at the time the contract was formed on Pugh's suggestion, and plaintiff and defendant agreed that defendant would replace her maple floors with oak floors. Defendant undertook to do something directly for plaintiff. MCL 600.1405(1); *Schmalfeldt, supra* at 428.

While we find *Kisiel* distinguishable, we also note our concern that *Kisiel* suggests that there is a different or separate standard for determining third-party-beneficiary status in construction cases involving contracts between contractors and subcontractors. As evident from the plain language of MCL 600.1405, there are no situational distinctions created by the statute in analyzing whether a party is a third-party beneficiary. Most telling in the *Kisiel* opinion is the panel's reliance, not on Michigan authority, but on out-of-state authority and general treatises, although the out-of-state cases ultimately, for the most part, support our resolution of this appeal. First, there is no reference to any relevant statutory provision on the issue of third-party beneficiaries in any of the out-of-state cases, which all rejected a finding that third-party beneficiary status was conferred relative to contractor-subcontractor agreements under the facts presented, and here we are confined to the language in MCL 600.1405; common-law principles were at work in these other jurisdictions. *155 Harbor Drive, supra* at 645-648; *Gentile, supra* at 791-793; *Thomson, supra* at 419-420; *Vogel Bros, supra* at 261-262. Furthermore, in *155 Harbor Drive, supra* at 647, the Illinois appellate court concluded:

> We find that the trial court properly dismissed plaintiff's third-party beneficiary claims. Plaintiff has the burden of proving that defendants intended to confer a direct benefit upon the Association. Plaintiff has failed to meet this burden. The Association has failed to identify any language in the subcontract which constitutes a virtual express declaration to overcome the presumption that the parties contracted only for themselves.[3] The subcontracts make no reference to the Association or its members, and do not express an intent to directly benefit either the Association

---

[3] We note that MCL 600.1405 creates no presumptions under Michigan law.

or its members. The provisions in the construction con-
tracts regarding guarantees to be provided by the contrac-
tor and the subcontractors do not mention the unit owners.
There is no question that the parties were aware that the
building was being built for subsequent purchasers. How-
ever, "[i]t is not enough that the parties know, expect or
even intend that" such people may benefit or that they are
referred to in the contract.

Here, the subcontract expressly references plaintiff
by name, and the subcontract is directly for her benefit.

In *Vogel Bros, supra* at 261, the contractor and the
subcontractor included an arbitration provision in their
contract in case of disagreements regarding the amount
to be paid, and there was no mention of any third party.
The city of Tarpon Springs, owner of the construction
project at issue, had filed a motion to abate court
litigation that had arisen, attempting to invoke the
arbitration provision as a third-party beneficiary. The
Florida appellate court reversed the trial court ruling
that granted the motion, and the appellate court rea-
soned that there was nothing in the plain language of
the contract suggesting that the contractor and the
subcontractor had intended for the city to primarily and
directly benefit from the arbitration provision. *Id.* at
261-262. Again, in the case at bar, there is contractual
language indicating that the flooring work was to be
performed directly for plaintiff.

In *Gentile, supra* at 792, the Ohio appellate court
rejected the plaintiff's third-party beneficiary claim,
holding that "the evidence does not create a reasonable
inference that [the contractor and the subcontractor]
entered into the roof-replacement contract in contem-
plation of the [plaintiff] purchasing the home. It is
undisputed that when [the contractor] contracted with
[the subcontractor] to have the new roof installed,
neither [the contractor] nor [the subcontractor] had

ever met the [plaintiff]." The appellate court refused to infer intent to create a third-party beneficiary solely on the basis of broad, conclusory assertions that the contractor understood that the roof was being replaced for the benefit of someone who would eventually purchase the home. *Id.* at 792-793. The flooring work here was not for some unknown person or persons who would eventually benefit from the work; rather, plaintiff was an expressly identified third party under the contract.

In *Thomson, supra* at 419-420, the Texas appellate court first stated that "absent clear evidence to the contrary, a property owner is not a third-party beneficiary of a contract between the general contractor and a subcontractor."[4] The plaintiffs in *Thomson* claimed third-party beneficiary status on the basis of two contracts. The first contract involved engineering services that had been subcontracted relative to the construction of an apartment complex, and the contractor-subcontractor agreement did mention in its title that the project was located on the plaintiffs' property. *Id.* at 417-418. The Texas court, however, concluded that the plaintiffs were merely incidental beneficiaries because the plaintiffs indirectly benefited from the contract as real-estate development almost always benefits the property owner. *Id.* at 420. While this case might run contrary to our conclusion here, the ruling would be inconsistent with MCL 600.1405 and the Supreme Court precedent cited above, where our statute simply requires the existence of a promise to do something directly for a third party, i.e., a third party referenced in the contract. The second contract relied on by the plaintiffs in *Thomson* was rejected by the court as a basis for a third-party beneficiary claim because that

---

[4] As indicated above, we emphasize that MCL 600.1405 does not create special rules for cases involving contractors and subcontractors.

contract contained no mention of the plaintiffs or the property. *Thomson, supra* at 420. Such is not the case here.

We hold that plaintiff is a third-party beneficiary of the Pugh-defendant contract under MCL 600.1405 as a matter of law, and the trial court on remand is to enter an order granting summary disposition in favor of plaintiff on this issue. MCR 2.116(I)(2). Of course, plaintiff must now proceed to litigate whether defendant breached the contract, whether plaintiff incurred damages, and whether the breach caused the alleged damage.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.