# STATE OF MICHIGAN

# COURT OF APPEALS

SARAH SCOTT,

        Plaintiff-Appellant,

v

INDEPENDENCE GREEN ASSOCIATES, LLC,
and NORTHSTAR REALTY FINANCE
CORPORATION,

        Defendants/Cross-Plaintiffs-
        Appellees,

and

ATLANTIC IX,

        Defendant,

and

BRIEN'S SERVICES, INC,

        Defendant/Cross-Defendant-
        Appellee.

UNPUBLISHED
April 12, 2018

No. 335929
Oakland Circuit Court
LC No. 2015-145993-NO

Before: SAWYER, P.J., and HOEKSTRA and MURRAY, JJ.

PER CURIAM.

In this slip and fall case, plaintiff Sarah Scott appeals as of right the circuit court order granting summary disposition to defendants Independence Green Associates, LLC ("Independence Green") and Brien's Services, Inc. Because the parking lot where plaintiff fell was fit for its intended use, the trial court did not err by granting summary disposition to Independence Green under MCR 2.116(C)(10). Likewise, because plaintiff was not an intended third-party beneficiary of the snow removal contract and Brien's Services did not breach a duty owed to plaintiff independent of the contract, the trial court did not err by granting summary disposition to Brien's Services. Accordingly, we affirm.

In December of 2013, plaintiff rented an apartment at Independence Green, an apartment complex in Farmington Hills, Michigan. Brien's Services is a landscaping and snow removal

-1-

business, which entered into a Services Agreement with Independence Green to provide landscaping and snow removal services for the complex. On the morning of December 29, 2013, plaintiff slipped and fell while walking to her car in the parking lot at Independence Green. Notably, the portion of the parking lot where plaintiff fell was marked by white striped lines as depicted in these photographs of the area:



As a result of her fall, plaintiff broke her ankle and she underwent surgery. Plaintiff later filed the current lawsuit. With regard to Independence Green, plaintiff asserted that Independence Green breached its duty to keep the area where she fell fit for its intended use as required by MCL 554.139(1)(a). Regarding Brien's Services, plaintiff claimed that Brien's Services negligently performed its duties under the Services Agreement and that plaintiff was therefore entitled to damages. In making this claim, plaintiff also alleged that she was an intended third-party beneficiary to the Services Agreement between Independence Green and Brien's Services. Both Independence Green and Brien's Services moved for summary disposition, which the trial court granted. Plaintiff now appeals as of right.

## I. STANDARD OF REVIEW

We review de novo a trial court's decision to grant summary disposition. *Morse v Colitti*, 317 Mich App 526, 534; 896 NW2d 15 (2016). In this case, the trial court granted summary disposition under MCR 2.116(C)(8) and (C)(10). However, the parties presented, and the trial court considered, evidence outside the pleadings, meaning that we consider the motions as having been granted pursuant to MCR 2.116(C)(10). *Sisk-Rathburn v Farm Bureau Gen Ins Co of Michigan*, 279 Mich App 425, 427; 760 NW2d 878 (2008). "When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all the evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact." *Id*. "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

## II. INDEPENDENCE GREEN

On appeal, plaintiff asserts that Independence Green breached its duty under MCL 554.139(1)(a). Specifically, plaintiff characterizes the striped area where she fell as a designated walkway. Based on the contention that she fell in an area akin to a sidewalk, plaintiff asserts that Independence Green had an obligation to keep the area free from ice so that the area would be fit for use by pedestrians.

Under MCL 554.139(1)(a), in every lease, the lessor covenants "[t]hat the premises and all common areas are fit for the use intended by the parties." The phrase "common areas" includes parking lots, and thus a lessor has a contractual duty to keep a parking lot "fit for the use intended by the parties" under MCL 554.139(1)(a). *Allison*, 481 Mich at 428-429. The intended use of a parking lot is for parking vehicles, meaning that "a lessor has a duty to keep a parking lot adapted or suited for the parking of vehicles." *Id*. at 429. In *Allison*, the Supreme Court explained what is required to maintain a parking lot in a manner that is fit for use as a parking lot, and the Court determined that a parking lot covered in 1 to 2 inches of snow and ice was not unfit for use as a parking lot. *Id*. at 429-430 & n 4. In reaching this conclusion, the Court recognized that tenants must walk on parking lots to reach their cars and that "a lessor may have some duty under MCL 554.139(1)(a) with regard to the accumulation of snow and ice in a parking lot." *Id*. at 429-430. However, the Court made plain that a parking lot need not be maintained in "ideal condition or in the most accessible condition possible;" rather, all that is required is the ability to park vehicles and to have reasonable access to the parked vehicles. *Id*.

In this case, viewing the evidence in a light most favorable to plaintiff, there was ice on the ground where she fell and she saw some "spotted" areas of snow in the parking lot. But, under *Allison*, the mere presence of ice and snow does not demonstrate that the parking lot was unfit for use as a parking lot. Indeed, plaintiff does not appear to dispute that, if she fell in a parking lot, *Allison* is controlling and her claim would fail because the presence of some ice and snow in the parking lot would be insufficient to demonstrate that the parking lot was not fit for its intended use.

Instead, plaintiff claims that she did not fall in a parking lot; rather, she fell on an area akin to a sidewalk.[1] In making this argument, plaintiff notes that she fell on a no-parking area

---

[1] On appeal, plaintiff makes the cursory argument that the ice in the parking lot was effectively unavoidable. However, plaintiff fails to explain how this unavoidability argument aids her claim under MCL 554.139(1)(a). Whether the ice was effectively unavoidable relates to the application of the open and obvious doctrine, which is relevant to common-law claims of premises liability and not a landlord's statutory obligation to tenants under MCL 554.139(1)(a). See *Allison*, 481 Mich at 425 n 2; *Royce v Chatwell Club Apartments*, 276 Mich App 389, 398; 740 NW2d 547 (2007). To the extent plaintiff's reference to the ice being effectively unavoidable implicates common-law premises liability, the argument is insufficiently briefed and we deem it abandoned. *Dunn v Bennett*, 303 Mich App 767, 775; 846 NW2d 75 (2013). In any event, we note that the evidence indicates that plaintiff could have walked across the grass to the

designated by white striped lines, and she emphasizes deposition testimony from the property manager, the director of maintenance, and the owner of Brien's Services to the effect that this area was an appropriate path for people to take when walking from the building to their cars in the parking lot. Based on the white striped lines and this deposition testimony, plaintiff contends that she fell in a designated walkway. As an area comparable to a sidewalk, plaintiff asserts that the area was unfit for its intended use because a sidewalk covered in ice is not fit for walking. See *Benton v Dart Props, Inc*, 270 Mich App 437, 444; 715 NW2d 335 (2006) ("Because the intended use of a sidewalk is walking on it, a sidewalk covered with ice is not fit for this purpose.").

Plaintiff's argument lacks merit because plaintiff fell in a parking lot, and reasonable minds could not conclude that she fell on a sidewalk. The area where plaintiff fell was an asphalt parking lot, distinct from sidewalks in the complex as evinced by the fact that the sidewalks in the complex are made of concrete, not asphalt. It is true that the area marked by white stripes is not a parking space and that people can walk on this area while going to their cars in the parking lot. But, the fact that the area in question is marked with white stripes and it connects to the sidewalk leading from the building does not make it a "sidewalk" for purposes of analysis as to the standard of care required for its maintenance. Clearly the area is an access point into the parking lot, but nevertheless it is a portion of the parking lot just as much as any other part, where a car is not parked, that is used to get to and from one's parked vehicle.

In other words, the fact that people walk in this area of the parking lot—just as they walk in other areas of the parking lot—does not render the area a sidewalk or something akin to a sidewalk. As recognized in *Allison*, every parking lot has pedestrian activity because tenants must walk in the parking lot to get to their vehicles and, indeed, a properly maintained parking lot must include reasonable access for tenants to their vehicles. *Id*. at 429-430. From *Allison*, it is clear that pedestrian activity in a parking lot related to the reasonable access to vehicles does not change the character of a parking lot into a sidewalk that is intended to serve a primarily pedestrian purpose.[2] See generally *Hadden v McDermitt Apartments, LLC*, 287 Mich App 124, 132; 782 NW2d 800 (2010) ("Walking in a parking lot is secondary to the parking lot's primary use."). Instead, the area marked by white striped lines is part of the parking lot. As such, the

_____

driver's side of her vehicle, meaning that the ice in the parking lot was not inescapable. See *Hoffner v Lanctoe*, 492 Mich 450, 468; 821 NW2d 88 (2012).

[2] In contrast to this conclusion, plaintiff cites *Hendrix v Lautrec, Ltd*, unpublished per curiam opinion of the Court of Appeals, issued October 27, 2016 (Docket No. 328191), held in abeyance by *Hendrix v Lautrec, Ltd*, 896 NW2d 3 (Mich 2017). Plaintiff's reliance on *Hendrix* is misplaced. First of all, *Hendrix* is unpublished and therefore nonbinding. MCR 7.215(C)(1). Second, *Hendrix* is distinguishable. *Hendrix* involved pedestrian use of connected driveways and this Court expressly recognized that "a driveway is not a parking lot." Thus, in *Hendrix*, this Court was tasked with considering whether connected driveways used for pedestrian purposes were akin to a parking lot or a sidewalk. Unlike the driveways at issue in *Hendrix*, plaintiff fell in a parking lot and her pedestrian use of the parking lot was of the type contemplated in *Allison*. In short, *Hendrix*'s analysis of driveways does not support plaintiff's argument.

standards for maintaining a parking lot as set forth in *Allison* apply to this case, and the presence of ice on the ground is insufficient to establish that the parking lot on which plaintiff fell was unfit for its intended use. MCL 554.139(1)(a); *Allison*, 481 Mich at 429-430. Consequently, because reasonable minds could not conclude that Independence Green breached a duty under MCL 554.139(1)(a), the trial court properly granted summary disposition to Independence Green.

## III. BRIEN'S SERVICES

With regard to Brien's Services, plaintiff claims that she is an intended third-party beneficiary of the snow removal contract or that, alternatively, Brien's Services breached a duty separate and distinct from the contract by creating a new hazard during the performance of its snow removal services. These arguments are without merit.[3]

First, plaintiff is not an intended beneficiary of the Service Agreement between Brien's Services and Independence Green. "Only intended, rather than incidental, third-party beneficiaries may sue when a contractual promise in their favor has been breached." *Kisiel v Holz*, 272 Mich App 168, 170; 725 NW2d 67 (2006). See also MCL 600.1405. "Third-party beneficiary status requires an express promise to act to the benefit of the third party; where no such promise exists, that third party cannot maintain an action for breach of the contract." *Kisiel*, 272 Mich App at 171 (quotation marks and citation omitted). Further, "[a] third person cannot maintain an action on a simple contract merely because he or she would receive a benefit from its performance or would be injured by its breach." *Id*. at 170-171. "An objective standard is to be used to determine, from the form and meaning of the contract itself, whether the promisor undertook to give or to do or to refrain from doing something directly to or for the person claiming third-party beneficiary status." *Vanerian v Charles L Pugh Co, Inc*, 279 Mich App 431, 435; 761 NW2d 108 (2008) (quotation marks and citation omitted).

In this case, the Services Agreement was entered into between Brien's Services and the owner of the Independence Green apartment complex. The contract provides that, in exchange for compensation, Brien's Services will perform landscaping and snow removal services at the complex. Plaintiff is not a party to the contract, and there is no express indication in the agreement that Brien's Services agreed to undertake snow removal services directly for plaintiff's benefit or directly for the benefit of the tenants as a group. See *Brunsell v Zeeland*, 467 Mich 293, 298; 651 NW2d 388 (2002). To the contrary, the Services Agreement contains a third-party beneficiary clause, which expressly states that "This Agreement is for the sole benefit

---

[3] On appeal, plaintiff states that she is not asserting a premises liability claim against Brien's Services, but she nevertheless argues that the open and obvious doctrine does not apply because the ice was effectively unavoidable. Given that plaintiff concedes her claim against Brien's Services is not one for premises liability, we see no reason to consider the open and obvious doctrine or whether the ice was avoidable. In any event, as discussed *supra*, the evidence indicates that plaintiff could have walked across the grass to the driver's side of her vehicle, meaning that the ice in the parking lot was not inescapable. See *Hoffner*, 492 Mich at 468.

of the Parties . . . ."[4]  Read objectively, this clause makes plain that Brien's Services did not undertake to do anything directly for plaintiff or the other tenants.  Instead, at most, plaintiff is an incidental beneficiary insofar as she—like other tenants or any member of the general public visiting the property—would benefit from the snow and ice removal.  But, this incidental benefit does not make plaintiff an intended third-party beneficiary, and thus plaintiff cannot succeed in a cause of action against Brien's Services based on Brien's Services purported breach of the snow removal agreement.  See *Kisiel*, 272 Mich App at 171.

Second, contrary to plaintiff's arguments, her claim for negligence must fail because there is no evidence that Brien's Services created a new hazard while moving snow and thus there is no evidence that Brien's Services breached a duty independent of its contractual obligations.  "To establish a prima facie case of negligence, a plaintiff must prove the following elements:  (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages."  *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011).  A party to a contract may be held liable under a negligence theory to a non-contracting third-party, provided that "a *legal duty* independent of a contract existed."  *Id.* at 169 (emphasis in *Loweke*).  For instance, there exists a common-law duty to use due care in undertakings, including undertakings involving the performance of a contract.  *Id.* at 170; *Hill v Sears, Roebuck & Co*, 492 Mich 651, 663; 822 NW2d 190 (2012).

In this case, there is no special relationship between plaintiff and Brien's Services, meaning that Brien's Services owed no duty to plaintiff to remove any snow or ice from the parking lot.  See *Hill*, 492 Mich at 661.  However, when undertaking its snow removal services pursuant to its contract with Independence Green, Brien's Services had a common-law duty to use due care in its undertakings.  *Id.* at 663; *Loweke*, 489 Mich at 169-170.  Thus, Brien's Services had an obligation, separate and distinct from its contractual duties, to refrain from creating a new hazard while performing snow and ice removal services.  *Fultz v Union-Commerce Assoc*, 470 Mich 460, 469; 683 NW2d 587 (2004).  Such a duty may be breached, for example, when the snow contractor creates a new hazard by "placing snow 'on a portion of the premises when it knew, or should have known or anticipated, that the snow would melt and freeze into ice on the abutting sidewalk, steps, and walkway, thus posing a dangerous and hazardous condition to individuals who traverse those areas.'"  *Id.* (citation omitted).

Relying on *Fultz*, plaintiff claims that Brien's Services negligently placed snow on the grass and elsewhere in the apartment complex in a manner that created a new hazard because the snow would melt and freeze into ice on the abutting sidewalks and parking lot.  However, plaintiff's claim is conjectural, and the record does not support her assertion that Brien's Services created a new hazard.  In particular, plaintiff testified that there was an unspecified amount of snow on the grass in front of her apartment building; but, she did not indicate whether this was fallen snow or whether it appeared that the snow had been placed on the grass by plowing.  Pictures taken the day after plaintiff's fall show minimal snow on the grass, and the

---

[4] There are exceptions to this clause, but they do not apply to the facts of this case.

pictures do not support the assertion that the grass was being used by Brien's Services as a dumping ground for snow. It is true that the owner of Brien's Services generally admitted that there were times when his workers placed snow on the grass in front of the apartment buildings at the complex. But, there is no evidence that Brien's Services had placed snow on the grass in front of plaintiff's building in particular or that they had done so in the timeframe leading up to her fall. There is also no evidence that, if snow on the grass melted, the liquid would have travelled to the back passenger door of plaintiff's car, to the area where she fell, before refreezing. Thus, even assuming that the temperatures and weather conditions could have led to melting snow and re-freezing as ice, there is no evidence that the patch of ice on which plaintiff slipped resulted from the melting of snow placed by Brien's Services. Indeed, during Michigan winters, snow and ice in a parking lot are not uncommon occurrences. To suggest that Brien's Services—rather than someone or something else—caused the icy hazard is an exercise in speculation and conjecture, and plaintiff's evidence is insufficient to establish that Brien's Services created a new hazard. See *Karbel v Comerica Bank*, 247 Mich App 90, 97; 635 NW2d 69 (2001) ("[P]arties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact.") (citation omitted). Accordingly, plaintiff has not shown that Brien's Services breached a legal duty owed to plaintiff, and the trial court properly granted summary disposition to Brien's Services.

Affirmed. Having prevailed in full, Independence Green and Brien's Services may tax costs pursuant to MCR 7.219.


/s/ David H. Sawyer
/s/ Joel P. Hoekstra
/s/ Christopher M. Murray