*Michigan Supreme Court*
*Lansing, Michigan 48909*

# *Opinion*

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED SEPTEMBER 24, 2002**

ELEANOR BRUNSELL,

    Plaintiff-Appellant,

v                                      No. 120051

CITY OF ZEELAND,

    Defendant-Appellee.

_____

**PER CURIAM**

In this case, plaintiff Eleanor Brunsell claims that defendant city of Zeeland is liable to her as an intended third-party beneficiary under a contract between the city and a third party. The trial court granted summary disposition in favor of the city. The Court of Appeals affirmed in an unpublished opinion, relying on the lead opinion in *Koenig v South Haven,* 460 Mich 667; 597 NW2d 99 (1999). We agree with the conclusion of the lower courts that plaintiff was not an intended third-party beneficiary under the circumstances of this case and, accordingly, affirm the Court of Appeals

resolution of this issue.

## I

Plaintiff alleges that she tripped and fell while walking because of a defect[1] in a sidewalk, resulting in a fractured left wrist.  The sidewalk was part of an area leased to the city by the First Michigan Bank & Trust Company.  The lease agreement provided that a sidewalk was among the "improvements" that the city, as lessee, was authorized to construct.  Pivotal to plaintiff's third-party beneficiary claim, the lease agreement included the following paragraph:

> 5.  Maintenance.  The Lessee [the city] shall repair the improvements which it constructs on the premises as may be necessary for the public safety.  The Lessor [the bank] shall remove snow, pick-up litter, and perform such other sanitary maintenance as may be required.

Plaintiff brought this action, alleging in pertinent part, that the city was liable to her as a third-party beneficiary for violating its contractual undertaking (in the quoted paragraph of the lease agreement) to "repair the improvements which it constructs on the premises as may be necessary for the public safety."[2]

---

[1] Specifically, plaintiff claims that "there was a crack between, and a difference in elevation in, adjoining sidewalk slabs. . . ."

[2] Plaintiff also brought a claim premised on the highway exception to governmental immunity, MCL 691.1402.  The lower courts rejected this claim because the sidewalk at issue, which was along part of a parking lot, was not adjacent to a

2

In granting summary disposition in favor of the city, the trial court, applying the lead opinion in *Koenig,* concluded that "there was not a sufficiently defined class to allow the filing of a third party beneficiary claim." In affirming, the Court of Appeals similarly relied on the lead opinion in *Koenig* in concluding that plaintiff was not an intended third-party beneficiary of the lease agreement with standing to sue for its alleged violation. In particular, that Court concluded that the agreement was primarily intended to benefit the parties to it (the city and the bank) by allocating their respective duties regarding maintenance of the leased area and that "the public generally" was too broad a group to be considered intended third-party beneficiaries of a contract.

## II

We review the resolution of a summary disposition motion de novo. *Roberts v Mecosta Co General Hosp,* 466 Mich 57, 62; 642 NW2d 663 (2002).

## III

MCL 600.1405, the third-party beneficiary statute, provides in pertinent part:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly

public highway. That issue is outside the scope of this opinion.

3

to him as the promisee.

> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise has undertaken to give or to do or refrain from doing something directly to or for said person.

> * * *

> (2)(b) If such person is not in being or ascertainable at the time the promise becomes legally binding on the promisor then his rights shall become vested the moment he comes into being or becomes ascertainable if the promise has not been discharged by agreement between the promisor and the promisee in the meantime.

Importantly, the plain language of this statute reflects that not every person incidentally benefitted by a contractual promise has a right to sue for breach of that promise, but rather only if the promisor has "undertaken to give or to do or refrain from doing something *directly* to or for said person." MCL 600.1405(1) (emphasis added).

In other words, MCL 600.1405 draws a distinction between intended third-party beneficiaries who may sue for a breach of a contractual promise in their favor, and incidental third-party beneficiaries who may not. In this regard, we agree with and adopt the following statutory analysis from the lead opinion in *Koenig, supra* at 676-677, 680:

> In describing the conditions under which a contractual promise is to be construed as for the benefit of a third party to the contract in § 1405, the Legislature utilized the modifier "directly." Simply stated, section 1405 does not empower just any person who benefits from a contract to enforce

4

it. Rather, it states that a person is a third-party beneficiary of a contract only when the promisor undertakes an obligation "directly" to or for the person. This language indicates the Legislature's intent to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract. Subsection 1405(2)(b)'s recognition that a contract may crate a class of third-party beneficiaries that includes a person not yet in being or ascertainable precludes an overly restrictive construction of subsection 1405(1). That is, it precludes a construction that would require precision that is impossible in some circumstances, such as would be the case if there were a requirement in all cases that a third-party beneficiary be referenced by proper name in the contract. This is simply to say that the Legislature, in drafting these two provisions, apparently wanted to strike a balance between an impossible level of specificity and no specificity at all. This means that there must be limits on the use of subsection 1405(2)(b) to broaden the interpretation of subsection 1405(1) because otherwise the result is to remove all meaning from the Legislature's use of the modifier "directly."

\* \* \*

[A] third-party beneficiary may be a member of a class, but the class must be sufficiently described. This follows ineluctably from subsection 1405(1)'s requirement that an obligation be undertaken *directly* for a person to confer third-party beneficiary status. As can be seen then, this of course means that the class must be something less than the entire universe, e.g., "the public"; otherwise, subsection 1405(2)(b) would rob subsection 1405(1) of any narrowing effect. The rationale would appear to be that a contracting party can only be held to have knowingly undertaken an obligation *directly* for the benefit of a class of persons if the class is reasonably identified. Further, in undertaking this analysis, an objective standard is to be used to determine from the contract itself whether the promisor undertook "to

5

> give or to do or to refrain from doing something *directly* to or for" the putative third-party beneficiary. *Guardian Depositors* [*Corp v Brown,* 290 Mich 433, 437; 287 NW 798 (1939)] (emphasis added). [Opinion of Taylor, J.]

In the present case, plaintiff can only plausibly claim third-party beneficiary status under the lease agreement as a member of the public because her claim is premised on contractual language referring to the city repairing improvements "as may be necessary for the public safety." There is nothing in the lease agreement that specifically designates plaintiff (or any reasonably identified class) as an intended beneficiary of the promise. Accordingly, as explained in the lead opinion in *Koenig,* plaintiff cannot be considered an intended third-party beneficiary under MCL 600.1405 because the public as a whole is too expansive a group to be considered "directly" benefitted by a contractual promise.

Moreover, an objective analysis of the contract at issue indicates that the contractual provision at issue was intended to delineate the obligations of the city and the bank with regard to the premises, not to directly benefit third parties. The allocation to the city of responsibility to "repair the improvements which it constructs on the premises as may be necessary for the public safety" is in the same paragraph of the lease agreement as the allocation to the bank of the

6

duties to "remove snow, pick-up litter, and perform such other sanitary maintenance as may be required."  This reflects that the parties were defining their obligations to each other with regard to maintenance concerns, not acting for the purpose of directly benefitting third parties.[3]  With regard to its promise, the city was assuring the bank that the bank would not be responsible for repairing the improvements on the premises to protect public safety.  There is no reason to conclude that the bank, obviously a business and not a charitable institution, was acting to protect parties other than itself in receiving this promise.  Accordingly, plaintiff was not an intended third-party beneficiary of the lease agreement because an objective analysis reflects that the city's promise to the bank that the city would be responsible

---

[3] This is strikingly similar to the circumstances of *Koenig.*  In *Koenig,* the plaintiffs' decedent was seriously injured as a result of being swept off of a pier on Lake Michigan by a large wave.  The piers in the relevant area were owned by the Army Corps of Engineers, but a memorandum of understanding (MOU) between the corps and the city of South Haven essentially provided South Haven with the authority to control public access to the piers while the corps had the responsibility to provide fence-type barricades.  Plaintiffs alleged that South Haven breached its duty under the MOU to preclude access to the pier under dangerous conditions and that their decedent was an intended third-party beneficiary of that agreement.  In the course of rejecting that position, the lead opinion in *Koenig* stated that "[a]n objective assessment of the MOU demonstrates that, rather than undertaking an obligation for the benefit of a putative third-party beneficiary, it allocates responsibilities between South Haven and the corps regarding restricting access to the piers during periods of dangerous conditions."  *Id.* at 680-681.

for repairs was not intended to directly benefit third parties.

IV

For these reasons, we affirm the decision of the Court of Appeals with regard to the third-party beneficiary issue. In all other respects, we deny leave to appeal because we are not persuaded that the questions presented should be reviewed by this Court.

CORRIGAN, C.J., and WEAVER, TAYLOR, YOUNG, and MARKMAN, JJ., concurred.

CAVANAGH and KELLY, JJ., would not dispose of this case by opinion per curiam, but would grant or deny leave to appeal.