655 N.W.2d 767 (2003)
Stanley S. KOMAJDA, Personal Representative of the Estate of Mary J. Komajda, Plaintiff-Appellee,
v.
WACKENHUT CORPORATION, Defendant-Appellant, and
Ford Motor Company, Defendant.
Docket No. 121308.
Supreme Court of Michigan.
February 4, 2003.
On order of the Court, the motion for leave to file an amicus curiae brief is considered, and it is GRANTED. The application for leave to appeal from the February 1, 2002, decision of the Court of Appeals is also considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.
MARILYN J. KELLY, J., concurring.
The contract at issue specifically stated that defendant undertook to "protect buyer's [Ford's] employees and property ... from any loss, injury or damage caused by accidents, civil disturbances, explosions, fire, theft, labor disputes, etc...." As a result, I agree with the Court of Appeals that the contract language allowed the jury to find that defendant had undertaken to protect plaintiff's decedent as a third-party beneficiary.
MARKMAN, J., dissenting.
This case involves the tragic death of Mary Komajda, who was shot by a coworker at the Ford Motor Company plant where she and her assailant worked. The Court of Appeals concluded that plaintiff Komajda was a third-party beneficiary of a security contract between Ford Motor Company and defendant security firm. Despite noting that "the evidence militates strongly against a finding of breach," unpublished opinion per curiam of the Court of Appeals, issued February 1, 2002, at 8, n. 4 (Docket No. 219204), the Court affirmed a substantial jury award to plaintiff because counsel for defendant did not argue that the evidence was insufficient to support a finding of a breach of contract.
However, defendant did argue that, because the contract was between Ford and defendant and because individual employees were not third-party beneficiaries of the contract, defendant had no legal duty to defend plaintiff. That is, there can be no breach of contract for an injury if a contract does not impose on a party a legal duty to protect another against such an injury. It is not clear that the contract here obligated defendant to protect individual Ford employees from the criminal acts of third parties. Not only does the contract set forth no such apparent duty, but I question how such an obligation could have been undertaken where defendant's guards were stationed at only one of three entrances to the plant and were prohibited as a general matter from performing searches of employees. Defendant is a security firm with a general contractual duty to Ford; it is not an insurer of each *768 individual Ford employee against the criminal acts of third parties and it does not serve as a personal bodyguard to each individual Ford employee against the criminal acts of third parties.
Further, in my judgment, this case involves a question of considerable public consequence. There are thousands of security contracts entered into by businesses and public and private institutions of every sort throughout Michigan. The parties to these contracts are entitled to know whether the contracts impose strict liability on security firms for all injuries suffered by employees from the criminal acts of third parties who manage to circumvent security. For if it is not strict liability that is being imposed here on defendant, it is hard to know what the basis is for defendant's liability. What specifically did defendant do wrong? What specifically did defendant do negligently? What specifically did defendant do to breach its contract? There are no answers to these questions in the Court of Appeals decision.
Is it relevant to a finding of liability that a security firm, such as Wackenhut, clearly lacks the resources and authority to prevent any conceivable violation of security? Is it relevant, as in this case, that there is no apparent negligence or recklessness on the part of a security firm? Is it relevant, as in this case, that there was no apparent disorder on the premises preceding the shooting? Is it relevant, as in this case, that the killing was perpetrated by a coworker who had some authority to be on the premises? Is it relevant, as in this case, that the criminal conduct resulting in the killing of plaintiff was unforeseen and unforeseeable? Or do security contracts invariably impose strict liability on security firms?
It is important that the parties to security contracts throughout our state be made aware of the scope of legal duties imposed by such contracts. Indeed, it is important that parties to contracts generally be apprised of the scope of liability that they may incur to third parties by their contracts. It is unfair to transform a widespread type of business contract, as here, into something arguably quite different without clearly indicating what language is being relied on to justify this transformation.
While finding that Komajda was a third-party beneficiary of the contract between defendant and Ford, the Court of Appeals itself recognized that "Wackenhut never promised or guaranteed that it could protect Komajda or other employees from the criminal acts of co-employees or others.... Finding a breach of contract under these circumstances is akin to holding Wackenhut strictly liable for the physical harm suffered by Komajda." Id. at 8-9, n. 4. (Emphasis added.)[1] I am aware of no prior Michigan case law in which a security firm has been held strictly liable to third parties for injuries caused by the criminal conduct of still other third parties.
*769 As the three-justice, lead opinion in Koenig v. South Haven, 460 Mich. 667, 679, 597 N.W.2d 99 (1999), observed, "there is a temptation to blur the distinction between direct and incidental beneficiaries because... the claims of putative third-party beneficiaries are often compelling." Such language is prescient in describing the instant case in which plaintiff is an altogether innocent and sympathetic figure. Yet, as Koenig further observes, with equal insight, "the Legislature, apparently apprehensive about creating a disincentive to contract because of the fear of unanticipated third-party claims, chose to change [the common-law rule prohibiting thirdparties from suing on a contract] with great caution." Id.[2] The Legislature may well have had in mind exactly the type of impediment to contract raised by the instant Court of Appeals decision: what security firm would ever undertake to enter into a security contract with the understanding that they will be held strictly liable for any personal injury (Or property loss? Or business loss? Or emotional trauma?) suffered by a firm or its employees as the result of third-party criminal conduct. The brief amicus curiae filed by the National Association of Security Companies reflects this very concern.[3]
*770 Because there is, at the very least, considerable question whether defendant had any legal duty (much less any ability) to protect individual employees from this type of criminal conduct under the security contract, I would grant leave to appeal. If there was no such legal duty under the contract, then defendant's conduct could not have amounted to a breach of contract, even under a strict liability theory of liability.
NOTES
[1] The Court of Appeals reference to "strict liability" seems especially confusing in light of the fact that it affirmed on the basis of the breach of contract finding, rather than the negligence theory. It is difficult, as the brief amicus curiae of the National Association of Security Companies points out, to read the instructions in this case as being focused on anything other than negligence. Even the lone sentence of instruction relating to the third-party beneficiary statute concluded, "if you find the defendant Wackenhut violated the statute before or at the time of the occurrence you may infer that the defendant was negligent and you must decide whether such negligence was a proximate cause of the occurrence." Such an instructional approach by the trial court may help explain why defendant did not expressly argue that no breach of contract occurred, but merely that no prior duty existed with regard to third parties such that there could be a breach of contract.
[2] See also Brunsell v. Zeeland, 467 Mich. 293, 297, 651 N.W.2d 388 (2002), quoting Koenig, supra at 677, 597 N.W.2d 99, where this Court observed about Michigan's third-party beneficiary statute:

"[M.C.L. § 600.1405] states that a person is a third-party beneficiary of a contract only when the promisor undertakes an obligation `directly' to or for the person. This language indicates the Legislature's intent to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract." [Emphasis added.]
The instant Court of Appeals decision injects uncertainty into countless contracts entered into every day throughout our state, particularly those involving businesses and institutions in which there are large numbers of employees, customers, or visitors who, in the words of Brunsell, supra at 296, 651 N.W.2d 388, are, at most, merely the "incidental" beneficiaries of such contracts. In addition to perpetuating this uncertainty, and thereby ensuring that such contracts become more costly to the parties, this decision will lead inevitably to a substantial number of new lawsuits seeking to impose upon the legal system similarly "creative" ideas of liability and accountability.
[3] The understandable "temptation" described in Koenig to enable the sympathetic claims of third parties is compounded, in my judgment, by a growing dilution within our legal system of traditional understandings of accountability and personal responsibility, in which litigation seeks increasingly to hold accountable those who are unaccountable, and to hold unaccountable those who are accountable. The instant case is arguably emblematic of this trend because, while defendant security firm has been sued, Jerry Belanger, the plaintiff's killer, has not. Indeed, grotesquely, plaintiff's counsel called on Jerry Belanger to testify on behalf of Mary Komajda, and his testimony was invoked sympathetically by plaintiff's counsel during closing argument:

If Wackenhut guards had stopped him at the gate Mary would be alive today.... If Wackenhut had been doing their job they would have stopped him... it was Jerry's opinion [that Wackenhut's] failure to do their job, was a cause which contributed to her death. He acknowledges responsibility as he should. He played a significant role, he can't deny that, but sees it the way we see it, this death could have been prevented. [Emphasis added.]
How admirable of Jerry Belanger, a man who pointed a loaded gun at a woman, pulled the trigger, and murdered her in cold blood, to "acknowledge responsibility" for her death, and how equally sensitive and insightful on his part to allow that the responsibility was not his alone, but that others should be held accountable as well. Is there any better summation of the distortion of values, of the transformation of traditional notions of accountability and personal responsibility that have come to characterize parts of our legal system, than plaintiff's summation?