# STATE OF MICHIGAN

# COURT OF APPEALS

ZAMZAM FAWAZ,

        Plaintiff-Appellant,

v

YOUNIS ENTERPRISES, LLC,

        Defendant,

and

ACES 4 SEASON LAWN & SNOW CARE, INC.,

        Defendant-Appellee.

UNPUBLISHED
May 18, 2017

No. 330959
Wayne Circuit Court
LC No. 14-004246-NO

Before: SERVITTO, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Plaintiff Zamzam Fawaz appeals as of right from the trial court's order dismissing this case with prejudice. Plaintiff's appeal challenges the trial court's earlier order granting summary disposition in favor of defendant Aces 4 Season Lawn & Snow Care, Inc.[1] We affirm.

On appeal, the crux of plaintiff's arguments is that the trial court erred in granting summary disposition to defendant after concluding that defendant did not owe a duty of care to plaintiff. We disagree.

Defendant's motion for summary disposition was brought pursuant to MCR 2.116(C)(8) and (C)(10). This Court reviews de novo a trial court's decision regarding a motion for summary disposition. *McLean v Dearborn*, 302 Mich App 68, 72; 836 NW2d 916 (2013).

---

[1] Defendant Younis Enterprises, LLC was dismissed from this appeal, pursuant to the authority of MCR 7.218 allowing for voluntary dismissals, following a stipulation between plaintiff and Younis Enterprises, LLC. *Fawaz v Younis Enterprises, LLC*, unpublished order of the Court of Appeals, entered March 2, 2016 (Docket No. 330959).

-1-

In reviewing a motion under MCR 2.116(C)(10), the trial court considers affidavits, pleadings, depositions, admissions, and other evidence introduced by the parties to determine whether no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. The evidence submitted must be considered in the light most favorable to the opposing party. [*McLean*, 302 Mich App at 73 (citations and quotation marks omitted).]

This Court set forth the standard for reviewing a trial court's decision on a motion for summary disposition brought pursuant to MCR 2.116(C)(8) in *Lakin v Rund*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 323695); slip op at 2:

Such a motion tests the legal sufficiency of a claim and must be determined on the basis of the pleadings alone. All factual allegations supporting the claim and any reasonable inferences that can be drawn from the allegations are accepted as true. A motion under MCR 2.116(C)(8) should only be granted when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery.

Because the trial court considered materials outside of the pleadings in rendering its decision regarding defendant's motion for summary disposition, it is appropriate for this Court to consider summary disposition as having been granted pursuant to MCR 2.116(C)(10). *Kendzierski v Macomb Co*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 329576); slip op at 2.

Where plaintiff is attempting to establish negligence on the part of defendant, plaintiff is required to prove the following four elements: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000) (footnote and citation omitted). At issue in this case is whether defendant, who contracted with Younis Enterprises, LLC (Younis Enterprises) for snow removal services for the Petsmart parking lot where plaintiff fell, owed a duty of care to plaintiff. Whether a defendant owes a duty to another party is a question of law that this Court will review de novo. *Fultz v Union-Commerce Assoc*, 470 Mich 460, 463; 683 NW2d 587 (2004). The leading cases on the issue of defendant's duty to plaintiff are *Fultz* and *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157; 809 NW2d 553 (2011). In *Fultz*, the plaintiff was injured when she slipped and fell on an icy parking lot owned by one defendant, and maintained by another defendant (the defendant), a snow removal contractor. *Fultz*, 470 Mich at 461. After the plaintiff filed suit against the defendant for negligence and following a jury trial, the plaintiff was awarded compensatory damages where the jury concluded that the defendant was negligent in failing to perform its duties pursuant to the contract it entered into with the owner of the parking lot. *Id*. at 462. This Court affirmed, recognizing that the defendant owed the plaintiff a common-law duty to provide the snow removal services set forth in the applicable contract in a reasonable manner. *Id*. The Michigan Supreme Court granted the defendant's application for leave to appeal on the issue whether the plaintiff was owed a duty "arising from a contract to which she was not a party[.]" *Id*. at 462-463. In *Fultz*, the plaintiff contended that the defendant, where it contracted to provide snow removal services and to salt the parking lot in question, "owed a common-law duty to plaintiff to exercise reasonable care in performing its contractual duties." *Id*. at 463-464. In support of her assertion, the plaintiff cited the Restatement Torts, 2d, §324A, which provides, in pertinent part, as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect [sic, perform] his undertaking, if

\* \* \*

(b) he has undertaken to perform a duty owed by the other to the third person . . . . [*Fultz*, 470 Mich at 464 (footnote omitted).]

The Michigan Supreme Court noted that courts of this state "have accepted the Restatement of Torts, 2d, § 324A, as an accurate statement of Michigan law," but cautioned that such authority could not be "invoked uncritically or without regard to limiting principles within [Michigan] case law." *Fultz*, 470 Mich at 464. The *Fultz* Court recognized that one who "voluntarily undertakes to perform an act, having no prior obligation to do so," may carry a duty to perform the act in a "nonneglient manner." *Id*. at 465 (citation omitted). Moreover, the *Fultz* Court held:

Accordingly, the lower courts should analyze tort actions based on a contract and brought by a plaintiff who is not a party to that contract by using a "separate and distinct" mode of analysis. Specifically, the threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on a contract will lie. [*Id*. at 467-468 (footnote omitted).]

The *Fultz* Court held that the Court of Appeals erred in affirming the jury verdict where, under the facts of that case, the plaintiff did not allege any duty was owed to her that was independent of the contract at issue. *Id*. at 468. The *Fultz* Court thus distinguished the facts before it from the case of *Osman v Summer Green Lawn Care, Inc*, 209 Mich App 703; 532 NW2d 186 (1995), rev'd on other grounds in *Smith v Globe Life Ins Co*, 460 Mich 446; 597 NW2d 28 (1999), where the defendant snow removal contractor in *Osman* "had breached a duty separate and distinct from its contractual duty when it created a new hazard" where it placed snow in a place where it posed a "dangerous and hazardous" condition to individuals traversing the areas at issue. *Fultz*, 470 Mich at 468-469. Put simply, the *Fultz* Court concluded that the defendant's "failure to carry out its snow removal duties" pursuant to the contract "created no new hazard to [the] plaintiff." *Id*. at 469.

The Michigan Supreme Court subsequently decided *Loweke*, taking "the opportunity to clarify *Fultz's* 'separate and distinct' mode of analysis[,]'" recognizing that *Fultz* had been erroneously construed to bar negligence causes of action where a third-party plaintiff "alleges a hazard that was the subject of the defendant's contractual obligations with another." *Loweke*, 489 Mich at 163. The *Loweke* Court recognized that, in the context of breach of contractual obligations, Michigan courts had historically differentiated between "'misfeasance' of a contractual obligation – i.e. 'active misconduct' - and 'nonfeasance' of a contractual obligation - i.e., 'passive inaction[.]'" *Id*. at 163 (citation omitted). The *Loweke* Court observed that in *Fultz*, the Court had recognized that the distinction between misfeasance and nonfeasance could

be "slippery[,]" and instead channeled the focus to whether a defendant owed a plaintiff a duty. *Loweke*. *Id*. at 165. According to the *Loweke* Court, Michigan courts had engaged in the following incorrect analysis post-*Fultz*:

> Courts have misconstrued *Fultz's* test requiring a separate and distinct duty by erroneously focusing on whether a defendant's conduct was separate and distinct from the obligations required by the contract. This interpretation is incorrect because, in analyzing tort actions based on a contract and brought by a noncontracting third party, *Fultz* directed courts to focus on [w]hether a particular defendant *owes any duty at all* to a particular plaintiff, and, thus, generally required an inquiry into whether, aside from the contract, a defendant is under any legal obligation to act for the benefit of the plaintiff[.] [*Id*. at 168 (footnote, citations and internal quotation marks omitted).]

The *Loweke* Court thus cautioned that the question whether a duty to a third party arises "separately and distinctly" from the contract at issue will not necessarily be decided according to the terms of the contract. *Id*. at 169. Rather, pursuant to *Fultz*, the dispositive inquiry is "whether a defendant owes a noncontracting, third-party plaintiff a legal duty apart from the defendant's contractual obligations to another." *Id*. (citation omitted). A separate and distinct duty, the *Loweke* Court recognized, can arise by way of statute, or "preexisting tort principles," such as where a special relationship exists between the parties, or where there is a "generally recognized common-law duty to use due care in undertakings[.]" *Id*. at 170. The *Loweke* Court took care to caution that "while the mere existence of a contractual promise does not ordinarily provide a basis for a duty of care to a third party in tort, "the existence of a contract [also] does not extinguish duties of care otherwise existing . . . ." *Id*. at 170 (citation and internal quotation marks omitted). In sum, the *Loweke* Court held as follows:

> Accordingly, with the aforementioned principles in mind, we clarify that when engaging in the separate and distinct mode of analysis in *Fultz's* analytical framework, courts should not permit the contents of the contract to obscure the threshold question of whether any independent legal duty to the noncontracting third party exists, the breach of which could result in tort liability. Instead, in determining whether the action arises in tort, and thus whether a separate and distinct duty independent of the contract exists, the operative question under *Fultz* is whether the defendant owed the plaintiff any legal duty that would support a cause of action in tort, including those duties that are imposed by law. [*Id*. at 171 (citation and internal quotation marks omitted).]

On appeal, plaintiff appears to argue that the trial court's analysis was not in line with the Michigan Supreme Court's subsequent clarification of *Fultz* in *Loweke*. While the trial court in this case relied on *Fultz*, rather than *Loweke,* in its bench ruling, a review of the trial court's ruling in its entirety confirms that the trial court correctly applied the applicable and governing legal principles set forth in *Fultz*, and later discussed and clarified in *Loweke*. For example, the trial court properly cited *Fultz* for the legal proposition that the court must determine that defendant owed plaintiff a duty "separate and distinct from the defendant's contractual obligations." The trial court also recognized that without an "independent duty to plaintiff[,]" a tort action on the basis of the contract cannot be successfully pursued. The trial court also

-4-

correctly analyzed whether plaintiff had established that a duty to her existed that was separate and distinct from defendant's contractual obligations, ultimately determining that plaintiff had made no such showing. Therefore, as set forth in more detail in the analysis below, the trial court properly considered and decided "the threshold question of whether any independent legal duty [to plaintiff] exist[ed]." *Id*. at 171.

For example, plaintiff argues that defendant owed a duty to her independent of the contract with Younis Enterprises where defendant failed to use due care in its maintenance of the Petsmart parking lot. As the Michigan Supreme Court noted in *Loweke*, where one who undertakes to do something fails to use due care, or does not act in a manner that avoids unreasonably endangering others, this may result in liability even where a duty did not otherwise exist. *Id*. at 165. In support of this assertion, plaintiff points to the testimony of Ahmad Beydoun, defendant's owner, during his July 13, 2015 deposition. As a preliminary matter, while plaintiff's counsel referred briefly to this deposition testimony from Beydoun during the hearing on defendant's motion for summary disposition, Beydoun's deposition testimony was not part of the lower court record, and "[t]his Court's review is limited to the record developed by the trial court . . . [.]" *Wiand v Wiand*, 178 Mich App 137, 143; 443 NW2d 464 (1989). However, a review of Beydoun's deposition testimony confirms that, rather than amounting to an admission of negligence in undertaking to maintain the Petsmart parking lot, Beydoun testified that he could not state with certainty whether black ice would have formed on the morning of plaintiff's fall, as such matters were outside of his control. Therefore, Beydoun's testimony is not supportive of plaintiff's assertion that defendant failed to act with reasonable care in undertaking to maintain the Petsmart parking lot.

Similarly, plaintiff contends that defendant was grossly negligent where she alleges that the area where she slipped and fell on ice was large, and that "[s]uch a large area could not have been left unsalted except in gross negligence[.]" Plaintiff reaches this conclusion on the basis of the deposition testimony of her sister, Malak Fawaz, who testified that while she did not notice slippery conditions on the driver's side of the vehicle as she exited the vehicle, when she went to the other side of the vehicle to help plaintiff she could feel ice under her. Specifically, Malak testified, "I was stepping and I felt myself sliding." According to Malak, the area of the black ice could not have been small, because as she walked toward plaintiff, with distance still between her and plaintiff, Malak almost slid. However, Malak was unable to estimate the distance between her and plaintiff when Malak also started to slide on ice.

While plaintiff points to Malak's deposition testimony as evidence that defendant failed to exercise due care in its maintenance of the Petsmart parking lot, her argument is simply not persuasive. Put another way, the record evidence does not support plaintiff's allegation that defendant acted without due care, or in an manner that "unreasonably endanger[ed] the person or property of others[.]" *Loweke*, 489 Mich at 165 (citations and internal quotations omitted). Plaintiff also points again to Beydoun's deposition testimony as evidence of defendant's failure to exercise due care. In his deposition testimony, Beydoun testified that he attended the Mercury Plaza where the Petsmart store is located on February 23, 2014, sometime between 3:00 a.m. and 4:00 a.m. On February 22, 2014, the parking lot was plowed and salted, and on February 23, 2014, the parking lot was salted again. Beydoun acknowledged that after plowing and salting, the ground may need to be salted again because "sometimes you get dethawing of the snow that runs into the parking lot. And when that happens, you have to go back out and treat that property

for that reason." When testifying hypothetically on the subject of how often he will visit a location that he is responsible for maintaining, Beydoun also testified that after a snowfall, and after snow is plowed, if a subsequent thaw occurs that causes the snow to melt and then refreeze, salting of the property will be necessary. Beydoun also noted that he salted on February 23, 2014, even though it had not snowed, because of potential "melting" and "dethawing[.]" Plaintiff also points to weather records that were also attached to her response to defendant's motion for summary disposition, in part confirming that temperatures at Detroit Metro Airport ranged from -1 degree Fahrenheit to 32 degrees Farhrenheit from February 12, 2014 to February 22, 2014, and that on February 23, 2014, the temperature was 20 degrees Fahrenheit. There were also 3½ inches of snowfall on February 17, 2014, and .90 inches of precipitation at Detroit Metro Airport on February 20, 2014.

Viewing the record evidence in the light most favorable to plaintiff, genuine issues of material fact do not exist with regard to whether defendant failed to exercise due care in undertaking to maintain the Petsmart parking lot. *Loweke*, 489 Mich at 170. Even considering Beydoun's deposition testimony, there is nothing in the record to suggest that defendant acted in a negligent manner in plowing and salting the Petsmart parking lot. *Fultz*, 470 Mich at 465. Plaintiff argues that the trial court erred in considering whether defendant created "a *new* hazard" as contemplated by *Fulke*, 470 Mich at 469, stating that whether a defendant created a new hazard in its undertaking of its duties is no longer a valid consideration post-*Loweke*. However, the primary holding of the *Loweke* opinion is that Michigan courts must determine whether a defendant owed a plaintiff a separate and distinct duty independent of the contract at issue. *Loweke,* 489 Mich at 171. In this case, the trial court properly considered whether defendant had breached the common-law duty to exercise due care in its undertakings, ultimately determining that defendant's performance of its duties did not create a new hazard to those that may traverse the Petsmart parking lot. Unlike the facts in *Fultz*, there is nothing in the present record to suggest that defendant acted in a manner in maintaining the Petsmart driveway that it knew, or should have known, posed a "dangerous and hazardous condition to individuals" using the Petsmart parking lot. *Fultz*, 470 Mich at 469, citing *Osman*, 209 Mich App at 704 (internal quotation marks omitted). Therefore, the trial court's determination that defendant did not owe a duty to plaintiff separate and distinct from its duties pursuant to its contract with Younis Enterprises was legally sound.

In support of her argument that defendant owed a duty of care to her, plaintiff also asserts that she held the status of an invitee while visiting the Petsmart property, and therefore she was an intended third-party beneficiary of the contract that defendant entered into with Younis Enterprises to remove snow and salt the parking lot. Notably, plaintiff does not provide any legal authority in support of her claim, and our research did not yield any legal authority supporting plaintiff's cursory legal argument. In *Peterson Novelties, Inc v Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003), this Court recognized that the failure to provide legal authority in support of a claim amounts to abandonment of the claim. Specifically, "[a] party may not leave it to this Court to search for authority to sustain or reject its position." *Id*. (citation and quotation marks omitted). Accordingly, plaintiff has effectively abandoned any claim that her status as an invitee on the property also rendered her a third-party beneficiary to the contract between defendant and Younis Enterprises. In any event, a review of applicable legal precedent confirms that plaintiff's legal argument is without merit.

For example, in *Schmalfeldt v North Pointe Ins Co*, 469 Mich 422, 428; 670 NW2d 651 (2003), the Michigan Supreme Court set the governing legal principles regarding third-party beneficiaries to contracts:

> A person is a third-party beneficiary of a contract *only when that contract establishes that a promisor has undertaken a promise directly to or for that person*. MCL 600.1405;[2] *Koenig v South Haven*, 460 Mich 667, 677; 597 NW2d 99 (1999). By using the modifier directly, the Legislature intended to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract. *Id*. An objective standard is to be used to determine, from the form and meaning of the contract itself, *Kammer Asphalt Paving Co, Inc v East China Twp Sch*, 443 Mich 176, 189; 504 NW2d 635 (1993) (citation omitted), whether the promisor undertook to give or to do or to refrain from doing something directly to or for the person claiming third-party beneficiary status, [*Brunsell v Zeeland*, 467 Mich 293, 298; 651 NW2d 388 (2003). [Emphasis supplied; footnote added.]

As the trial court correctly recognized, the language of the contract between Younis Enterprises and defendant reflects no indication that the contracting parties were "aware that the scope of their contractual undertakings encompasses a third party[.]" *Schmalfeldt*, 469 Mich at 428. Moreover, we have reviewed the contract language, and there is nothing in the clear contract terms, viewed from an objective standard, leading to the conclusion that defendant undertook to do something for plaintiff, or anyone else, as a third-party beneficiary. *Schmalfeldt*, 469 Mich at 428. Therefore, plaintiff's claim that she was a third-party beneficiary is unavailing and unsupported in the record.

Finally, plaintiff asserts that defendant did not properly support its motion for summary disposition pursuant to MCR 2.116(C)(10). In *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016), the Michigan Supreme Court recognized that a party moving for summary disposition pursuant to MCR 2.116(C)(10) satisfies its burden of production "by submitting affirmative evidence that negates an essential element of the non-moving party's claim[.]"

---

[2] MCL 600.1405, Michigan's third-party beneficiary statute, provides, in pertinent part, as follows:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.

> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.

(Citation omitted.)[3]  As noted previously, to successfully establish a claim of negligence against defendant, plaintiff was required to show that defendant owed her a duty of care.  *Case*, 463 Mich at 6.

In its motion seeking summary disposition pursuant to both MCR 2.116(C)(8) and (10), the crux of defendant's argument was that defendant did not owe plaintiff a duty of care. Specifically, defendant noted in its motion and brief in support that where it created no new hazard or unreasonably dangerous condition for those traversing the Petsmart parking lot, it did not breach any common-law duty of due care separate and independent from the contract between defendant and Younis Enterprises.  Defendant supported its motion with a copy of the contract between defendant and Younis Enterprises, a copy of the first amended complaint, defendant's maintenance log for the Petsmart parking lot, as well as with a copy of Younis Enterprises's motion for summary disposition.  Younis Enterprises's motion included copies of the deposition transcripts of both plaintiff and Malak.  Therefore, a close review of the record simply belies plaintiff's claim that defendant's motion was not well-supported and that defendant did not meet its burden of production.  Indeed, it is clear that defendant produced ample documentation to support its argument that it did not owe plaintiff a duty of care, and that it had not breached any common-law duty of care to perform its undertakings pursuant to the contract in a reasonable, nonnegligent manner.  Accordingly, plaintiff's argument that defendant's motion for summary disposition was not properly supported as required by the court rule is without merit.

Affirmed.  Defendant, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Deborah A. Servitto
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood

---

[3] The *Lowrey* Court also stated that a moving party may also satisfy its burden pursuant to MCR 2.116(C)(10) by "demonstrat[ing] to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."  *Lowrey*, 500 Mich at 7 (citation and quotation marks omitted).