*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FARM BUREAU INSURANCE COMPANY, Subrogee of JEFF FURNESS, FREDRIC WILSON, KENNY MALBURG'S LANDSCAPING, INC., and TIMOTHY DEMARAY, and PIONEER MUTUAL INSURANCE COMPANY, Subrogee of JAY D. FERGUSON, AMANDA FERGUSON, D & R HENNE FARMS, INC., and DOROTHY WALTON and LYNN WALTON, doing business as WALTON FARMS, and HASTINGS MUTUAL INSURANCE COMPANY, Subrogee of JAMES T. YOUNG, SHELLY YOUNG, MARVIN HILL, LOIS HILL, CLIFFORD C. KESSLER, and SHIRLEY KESSLER,

   Plaintiffs-Appellees,

v

TNT EQUIPMENT, INC.,

   Defendant,

and

EMPLOYERS MUTUAL CASUALTY COMPANY,

   Defendant-Appellant.

FOR PUBLICATION
June 20, 2019
9:00 a.m.

No.  343307
Sanilac Circuit Court
LC No.  16-036858-NZ

Before:  MURRAY, C.J., and GADOLA and TUKEL, JJ.

GADOLA, J.

   Defendant, Employers Mutual Casualty Company (Employers), appeals as of right the order of the trial court dismissing without prejudice defendant, TNT Equipment, Inc. (TNT), and

challenges the earlier orders of the trial court granting plaintiffs' motion for summary disposition, while denying Employers' motions for summary disposition and for reconsideration. We reverse the order of the trial court granting plaintiffs summary disposition, and remand to the trial court for entry of summary disposition in favor of Employers.

## I. FACTS

This case arises from a fire that occurred at a storage facility owned by TNT in Sandusky, Michigan, on April 5, 2016. Plaintiffs are insurance companies. The parties do not dispute that plaintiffs' insureds owned farm equipment that was stored at the TNT facility at the time of the fire, and that plaintiffs, having paid claims to their insureds for the damaged farm equipment, are now subrogees of the rights of their insureds.

At the time of the fire, Employers had issued to TNT a "Commercial Inland Marine" policy of insurance that was then in effect. Plaintiffs sought reimbursement from Employers for the amounts they had paid to their insureds for the damaged farm equipment, contending that plaintiffs' insureds were entitled to coverage under Employers' policy with TNT, and that plaintiffs were therefore entitled, as subrogees, to payment from Employers. Employers declined to pay plaintiffs. Employers explained that TNT had exercised an option under the policy directing Employers "to pay for their [TNT's] customer's deductibles and verifiable uninsured losses only." Employers determined that because TNT had opted out of any other coverage, it was not obligated to pay any other amounts for damages to the farm equipment belonging to plaintiffs' insureds.

Plaintiffs, as subrogees of their insureds, initiated this lawsuit, alleging counts against TNT for breach of bailment contracts, breach of implied warranty, negligence, gross negligence, and warehouse liability. Plaintiffs also asserted claims against Employers, seeking first-party insurance benefits under Employers' policy with TNT, and alternatively, seeking benefits under the policy as third-party beneficiaries. The parties filed cross-motions for summary disposition under MCR 2.116(C)(8), (9), and (10), regarding whether plaintiffs had a right to enforce the policy and claim benefits from Employers directly under the insurance policy. The trial court concluded that plaintiffs' insureds were entitled to the status of "additional insureds" under the policy, and therefore were entitled to enforce the policy against Employers. The trial court then granted plaintiffs summary disposition under MCR 2.116(C)(10), while denying Employers summary disposition. The trial court thereafter denied Employers' motion for reconsideration.

The trial court also entered an order dismissing TNT from the case without prejudice.[1] Employers now appeals to this Court from the trial court's final order dismissing TNT,

---

[1] Pursuant to the parties' stipulation, the trial court entered an order on July 13, 2017, dismissing TNT, but providing that the suit against TNT would be reinstated under certain conditions. Employers appealed to this Court from that order of the trial court, and this Court dismissed the claim of appeal on the basis that the trial court's order was not a final order. *Farm Bureau Ins Co v TNT Equip Inc*, unpublished order of the Court of Appeals, entered August 9, 2017 (Docket No. 339457). Thereafter, the trial court vacated the July 13, 2017 order, and entered a new order

-2-

challenging the earlier orders of the trial court granting plaintiffs summary disposition and denying Employers' motions for summary disposition and for reconsideration.

## II. DISCUSSION

### A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to grant or deny summary disposition. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When reviewing an order granting summary disposition under MCR 2.116(C)(10), we consider all documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Dawoud v State Farm Mut Auto Ins Co*, 317 Mich App 517, 520; 895 NW2d 188 (2016). Summary disposition under MCR 2.116(C)(10) is warranted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id*. We also review de novo issues involving the proper interpretation of statutes and contracts. *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012). This Court reviews a trial court's decision to grant or deny a motion for reconsideration for an abuse of discretion. *Sanders v McLaren-Macomb*, 323 Mich App 254, 264; 916 NW2d 305 (2018). A trial court abuses its discretion if it chooses an outcome outside the range of principled outcomes. *Id*.

### B. FIRST-PARTY INSURED

Employers contends that the trial court erred in granting plaintiffs summary disposition because plaintiffs are not entitled to enforce the insurance policy between Employers and TNT. Employers first argues that plaintiffs' insureds were not insureds under the policy issued to TNT by Employers, and therefore lacked standing to pursue first-party benefits under the policy, and that plaintiffs, as subrogees of their insureds, likewise lack standing to seek first-party benefits under the policy. We agree.

An insurance policy, like other contracts, is an agreement between parties; a court's task is to determine what the agreement is and then give effect to the intent of the parties. *Waldan Gen Contractors, Inc v Michigan Mut Ins Co*, 227 Mich App 683, 686; 577 NW2d 139 (1998). In doing so, we consider the contract as a whole and give meaning to all terms of the contract. *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 566; 489 NW2d 431 (1992). We give the policy language its ordinary and plain meaning, and where policy language is clear, we are bound by the language of the policy. *Waldan*, 227 Mich App at 686.

An insurance policy is a contractual agreement between the insured and the insurer. *West American Ins Co v Meridian Mut Ins Co*, 230 Mich App 305, 310; 583 NW2d 548 (1998). Payment of benefits from one's own insurer generally is referred to as payment of first-party

---

dismissing TNT without prejudice. Plaintiffs offer arguments relating to the propriety of the trial court's actions in vacating and entering these orders, but did not file a cross-appeal raising these challenges. See *Kosmyna v Botsford Community Hosp*, 238 Mich App 694, 696; 607 NW2d 134 (1999).

benefits. See *Nickola v MIC Ins Co*, 500 Mich 115, 127; 894 NW2d 552 (2017) ("the insured by definition is a party to the insurance contract, not a third party.") This Court has suggested that a "first-party" insured is the insured under a policy, or an individual or entity directly entitled to benefits under the insured's insurance policy. See *Griswold Properties, LLC v Lexington Ins Co*, 276 Mich App 551, 565; 741 NW2d 549 (2007).

In this case, TNT purchased from Employers a policy of commercial inland marine insurance.[2] The parties do not dispute that plaintiffs' insureds were not parties to the policy between TNT and Employers, and that plaintiffs' insureds are not named insureds under that policy. There further is no dispute that the policy does not expressly grant anyone other than the named insured enforcement rights. Plaintiffs' insureds, therefore, had no express contractual rights under the policy and are not entitled to "first-party" benefits. The question, then, is whether plaintiffs' insureds, though not named insureds under the policy, are nonetheless entitled to seek to enforce the policy.

## C. ADDITIONAL INSURED

Plaintiffs argue, and the trial court found, that plaintiffs' insureds were entitled to enforce the contract as "additional insureds" under TNT's policy with Employers. An "additional insured" is defined generally as "[s]omeone who is covered by an insurance policy but who is not the primary insured. An additional insured may, or may not, be specifically named in the policy." *Black's Law Dictionary* (11th ed). Plaintiffs in this case do not contend that the policy here designated plaintiffs' insureds as "additional insureds" under the policy, and point to no published Michigan authority[3] supporting their position that they qualify as additional insureds absent a provision in the policy designating them as such. We therefore conclude that the trial court erred in finding plaintiffs, as subrogees of their insureds, to be additional insureds under the policy in question.

## D. THIRD-PARTY BENEFICIARY

Michigan law does recognize, however, the rights of a third-party beneficiary to seek enforcement of a policy of insurance. In Michigan, a person who is a nonparty to a contract may be entitled to sue to enforce the contract as a third-party beneficiary. MCL 600.1405; *Shay v Aldrich*, 487 Mich 648, 666; 790 NW2d 629 (2010). A person is a third-party beneficiary of a

---

[2] An inland marine insurance policy commonly is used to insure against damage to property caused during transport of the property. See *Waldan*, 227 Mich App at 686.

[3] In urging this designation for plaintiffs' insureds in this case, plaintiffs point to an unpublished opinion of this Court, where the plaintiff was found to be an "additional insured" in light of certain documents between the parties that designated the plaintiff as "Loss Payee and Additional Insured" under the specific policy in that case. We note this case is factually distinct from the unpublished case and further, that although the unpublished opinions of this Court may be viewed as instructive, they are not binding precedent of this Court. MCR 7.215(C)(1); *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

contract only if the contract establishes that a promisor has undertaken a promise directly to or for that person. *Koenig v South Haven*, 460 Mich 667, 676-677; 597 NW2d 99 (1999). A third-party beneficiary of a contract may enforce a contract against the promisor because the third-party beneficiary "stands in the shoes" of the promisee. *White v Taylor Distrib Co, Inc*, 289 Mich App 731, 734; 798 NW2d 354 (2010). In that regard, the third-party beneficiary statute provides, in relevant part:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
>
> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person. [MCL 600.1405.]

To create a third-party beneficiary, a contract must "expressly contain a promise to act to benefit the third party." *White*, 289 Mich App at 734. "[T]he plain language of this statute reflects that not every person incidentally benefitted by a contractual promise has a right to sue for breach of that promise . . . ." *Brunsell v Zeeland*, 467 Mich 293, 296; 651 NW2d 388 (2002). Rather, only intended beneficiaries, not merely incidental beneficiaries, may sue for breach of a contract. *Schmalfeldt v North Pointe Ins Co*, 469 Mich 422, 427; 670 NW2d 651 (2003). We use an objective standard to determine from the language of the contract itself whether the promisor undertook to give or to do, or to refrain from doing, something directly to or for the person asserting status as a third-party beneficiary. *Brunsell*, 467 Mich at 298. In doing so, we do not focus on the subjective intent of the contracting parties, but instead focus upon the intent of the contracting parties as determined solely from the "form and meaning" of the contract to determine whether the promisor undertook to give or to do or to refrain from doing something directly to or for the person claiming status as a third-party beneficiary. *Shay*, 487 Mich at 665.

Thus, the focus of the inquiry in this case is whether Employers, by virtue of its agreement to insure TNT, undertook to give or to do, or to refrain from doing, something directly to or for plaintiffs' insureds within the meaning of the third-party beneficiary statute, MCL 600.1405. Plaintiffs argue that the coverage provisions of Employers' policy with TNT demonstrate that Employers undertook to provide plaintiffs' insureds with coverage, thereby making them intended beneficiaries, under the following provisions:

**A. Coverage**

**1. Covered Property**, as used in this Coverage Form, means the type of property described in this Section A.1. . . .

\* \* \*

a. **Coverage A – Stock, Furniture, Fixtures, Equipment and Tenants Improvements and Betterments – Business Personal Property Includes:**

(1) Stock: We will pay for direct physical loss of or damage to stock of merchandise, including the value of your labor, materials or services furnished or

-5-

arranged by you on personal property of others, consisting principally of agricultural, construction and materials handling equipment, and appliances, parts, accessories thereof, and other merchandise usual or incidental to your business of agricultural, construction and materials handling equipment dealers . . . .

(2)  Furniture, Fixtures, Equipment and Tenant's "Improvements and Betterments":

We will pay for loss or damage to:

(a)  Furniture, fixtures and equipment used in your business and similar property held by you and belonging in whole or in part to others for not more than the amount for which you are liable . . . .

\* \* \*

b. **Coverage B – Property of Others**

We will pay for direct physical loss of or damage to property of others, which is similar to that described in **Coverage A** above, while such property is in your care, custody or control. . . .

\* \* \*

**M.  Payment of Losses**

Loss, if any, under this Coverage Form is payable to you for the account of all interests.  You agree to make proper distribution of funds so received to other parties in interest and to hold us harmless from any and all claims for damages which may be made against us by other interests as a result of and to the extent of such payments.

The separate loss-payable endorsement defines "you" and "your" as referring to the named insured, and then states, "Any loss shall be adjusted with 'you' and shall be payable to 'you' and the loss payee described on the 'declarations' as 'your' and their interests appear."  Although under the policy Employers promises to pay for direct physical loss of or damage to property of others, this promise is directed to TNT, not to plaintiffs' insureds.  We also observe that Employers makes no promise to plaintiffs' insureds under the payment of loss provisions of the policy in this case, which include the following provisions, in pertinent part:

**LOSS CONDITIONS**

\* \* \*

**E.  Loss Payment**

\* \* \*

3.      We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claim against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

* * *

6.      We will not be liable for any part of a loss that has been paid or made good by others.

**F. Other Insurance**

1.      You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2.      If there is other insurance covering the same loss or damage, other than that described in 1 above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

Plaintiffs argue that their insureds' damaged property falls under the provisions covering the property of others, and that their insureds therefore are beneficiaries entitled to enforce the contract. But the coverage provisions do not articulate a promise to pay plaintiffs' insureds; rather it is a promise *to TNT* to pay TNT, or others on behalf of TNT, for damage to property owned by others that is in the care, custody, or control of TNT. Although the owners of damaged property may, in certain circumstances, realize a benefit from TNT having coverage for such damage, the policy contains no promise to directly benefit plaintiffs' insureds within the meaning of MCL 600.1405. "Only intended beneficiaries, not incidental beneficiaries, may enforce a contract under [MCL 600.]1405." *Schmalfeldt*, 469 Mich at 429. Because the policy does not directly promise to do or not do something for plaintiffs' insureds, plaintiffs' insureds do not rise to the status of third-party beneficiaries under the policy, and therefore have no right to seek to enforce the policy between TNT and Employers.[4]

---

[4] In fact, the "Loss Payment" and "Other Insurance" provisions of the policy strongly suggest that Employers would not be liable to cover plaintiffs' losses in any event. The Loss Payment provision states that Employers will not be liable for any loss that has been made good by others, which has already occurred, while the Other Insurance provision states that Employers will only pay for the amount of loss or damage *in excess* of the amount due from that other insurance, whether TNT can collect on that insurance or not.

In analyzing this question, a review of our Supreme Court's decision in *Schmalfeldt* is instructive. In that case, the plaintiff was injured in a bar fight and incurred extensive dental expenses. He sought payment for his dental expenses from the bar owner, who refused. The plaintiff then sought payment directly from the bar owner's insurer who had issued a commercial liability insurance policy to the bar owner. The policy included a provision in which the insurer agreed to pay up to $5,000 for medical expenses for bodily injury incurred in the bar, regardless of fault. The bar owner, however, told the insurer that the bar did not want to invoke the medical coverage provision of the policy in that case, and the insurer consequently denied the plaintiff's request for benefits.[5]

The plaintiff then sued the insurer directly,[6] claiming to be a third-party beneficiary under the insurance policy by virtue of the medical benefits provision of the policy, which the plaintiff argued enabled him to sue the insurer to enforce the terms of the contract. The trial court denied the plaintiff's motion for summary disposition, determining that the plaintiff was not a third-party beneficiary under the policy. On appeal within the civil division of that court, the trial court held, to the contrary, that the plaintiff was directly benefitted under the policy and therefore was a third-party beneficiary empowered to seek to enforce the contract. This Court reversed, determining that the plaintiff was an incidental beneficiary only, and thus not entitled to enforce the contract between the insurer and the bar owner. Our Supreme Court affirmed, agreeing that the plaintiff was not a third-party beneficiary. The Court explained:

> A person is a third-party beneficiary of a contract only when that contract establishes that a promisor has undertaken a promise "directly" to or for that person. MCL 600.1405; *Koenig v South Haven*, 460 Mich 667, 677; 597 NW2d 99 (1999). By using the modifier "directly," the Legislature intended "to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract. *Id*. An objective standard is to be used to determine, "from the form and meaning of the contract itself," *Kammer Asphalt v East China Twp*, 443 Mich 176, 189; 504 NW2d 635 (1993) (citation omitted), whether the promisor undertook "to give or to do or to refrain from doing something directly to or for" the person claiming third-party beneficiary status, *Brunsell [v Zeeland]*, *supra* [467 Mich] at 298. [*Schmalfeldt*, 469 Mich at 428.]

---

[5] In this case, as in *Schmalfeldt*, the insured party (here TNT) chose not to invoke coverage under the policy for the damages sought by plaintiffs.

[6] The plaintiff in *Schmalfeldt* did not sue the bar owner, apparently conceding that the bar owner was not liable for any breach of duty. *Schmalfeldt*, 469 Mich at 424 n 1. Likewise, in this case, plaintiffs initially stipulated to the dismissal without prejudice of TNT from the lawsuit, apparently declining, for the time being at least, to attempt to establish liability on the part of TNT.

Concluding that the plaintiff in that case was not entitled to claim third-party beneficiary status, our Supreme Court further explained:

> Only intended beneficiaries, not incidental beneficiaries, may enforce a contract under § 1405. *Koenig [v South Haven]*, *supra* [460 Mich] at 680. Here, the contract primarily benefits the contracting parties because it defines and limits the circumstances under which the policy will cover medical expenses without a determination of fault. This agreement is between the contracting parties, and [the plaintiff] is only an incidental beneficiary without a right to sue for contract benefits. [*Schmalfeldt*, 469 Mich at 429.]

In this case, focusing on the "form and meaning" of the policy, we similarly conclude that the policy issued by Employers to TNT contains no promise by Employers to directly benefit plaintiffs' insureds within the meaning of MCL 600.1405. Plaintiffs' insureds, therefore, were not third party beneficiaries under the policy. Because plaintiffs' insureds were neither insureds nor third-party beneficiaries under the policy, they had no right to seek to enforce the policy between TNT and Employers.

In so concluding, we emphasize that the inquiry here is not whether there was coverage under the policy for the damage to the property of plaintiffs' insureds; the question of coverage is a separate inquiry that a court need not reach unless it is determined that a claimant, in fact, has a right to seek enforcement of the policy. See *Shay*, 487 Mich at 665-667. Rather the inquiry here is whether plaintiffs' insureds are members of a class (being either insureds or third-party beneficiaries), that empower them to seek to enforce the policy. In this case, the clear and unambiguous language of the policy does not evidence an intent of the parties to directly benefit plaintiffs' insureds.[7] We observe that "it is impossible to hold an insurer liable for a risk it did not assume," *Hunt v Drielick*, 496 Mich 366, 373; 852 NW2d 562 (2014) (quotation marks and citation omitted), and that the primary goal when interpreting an insurance policy is to honor the intent of the parties to that policy. *Tenneco, Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 444; 761 NW2d 846 (2008).

Here, TNT and Employers entered into a contract for the purpose of insuring TNT, should TNT be found liable for payment of damages to the property of others that was under its care, custody, or control. The question whether coverage under the policy would be triggered if TNT were found liable for damage to the property of plaintiffs' insureds is not before us. Rather, plaintiffs seek to enforce the policy and trigger coverage under the policy between TNT and Employers regardless of whether TNT is liable and regardless of whether TNT wants the coverage. The issue thus before us is whether plaintiffs, by virtue of the subrogated rights of their insureds, have a right to enforce the contract between TNT and Employers.

We conclude that the policy in question does not establish plaintiffs' insureds as insureds under the policy, nor were plaintiffs' insureds third-party beneficiaries under the policy. As in

---

[7] In fact, the Loss Payment and Other Insurance provisions of the policy suggest an intent *not* to directly benefit plaintiffs' insureds.

*Schmalfeldt*, plaintiffs' insureds were, at best, members of a broad class whom the policy recognized as, in certain circumstances, potential recipients of incidental benefits from the policy. As such, plaintiffs' insureds were incidental beneficiaries only, not qualifying for third-party status under MCL 600.1405. See *Schmalfeldt*, 469 Mich at 429. Plaintiffs therefore have no right to seek to enforce the policy between TNT and Employers.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Jonathan Tukel